IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **TESSENDERLO KERLEY, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**SIPCAM AGRO USA, INC. d/b/a SIPCAMADVAN LLC d/b/a SIPCAMADVAN, SIPCAMROTAM LLC, AND ADVAN, LLC,**<br><br>Defendants. | Civil Action No. 1:16-cv-00748<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

This is an action for patent infringement. Plaintiff Tessenderlo Kerley, Inc. ("TKI" or "Plaintiff"), by and through its undersigned attorneys, files this Complaint against defendants Sipcam Agro USA, Inc. d/b/a SipcamAdvan LLC d/b/a SipcamAdvan, SipcamRotam LLC, and Advan, LLC (collectively, "Sipcam" or "Defendants"). In support of its claims, Plaintiff states:

### Nature of the Action

1. This action arises under the Patent Act, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271 and the remedies specified under 35 U.S.C. §§ 281 and 283-285.

## The Parties

2. TKI is a Delaware corporation having its principal place of business at 2255 North 44th Street, Phoenix, Arizona 85008.

3. On information and belief, Sipcam Agro USA, Inc. d/b/a SipcamAdvan LLC d/b/a SipcamAdvan is a Georgia corporation having its principal place of business at 2525 Meridian Parkway, Suite 350, Durham, North Carolina 27713.

4. On information and belief, SipcamRotam LLC is a Delaware limited liability company having its principal place of business at 2525 Meridian Parkway, Suite 350, Durham, North Carolina 27713.

5. On information and belief, Advan, LLC is a Delaware limited liability company having its principal place of business at 2525 Meridian Parkway, Suite 350, Durham, North Carolina 27713.

## Jurisdiction and Venue

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338(a) which confers jurisdiction over cases of patent infringement as well as under 28 U.S.C. § 1331 which confers federal question jurisdiction in general.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b).

8. Defendants are subject to personal jurisdiction in this judicial district because, *inter alia*, of their contacts here, including that they reside and conduct business in this judicial district by regularly and systematically transacting and/or soliciting business in

this judicial district, directly or through intermediaries, and/or they have committed acts of infringement in this judicial district.

## TKI's Patent-in-Suit

9. United States Patent No. 8,637,091 ("the '091 patent") is entitled "Compositions Comprising Particles Resulting From Processing in a Slurry Mix," and issued on January 28, 2014 to inventors Richard C. Pluta and John T. Mosko. TKI owns by assignment the entire right, title, and interest in and to the '091 patent. A true and correct copy of the '091 patent is attached to this Complaint as **Exhibit A**.

10. As background, the mineral kaolin, in its crude or unprocessed state, contains a variety of impurities including crystalline silica. Generally, the presence of crystalline silica is now considered highly undesirable—particularly in agricultural particle films—due to the inherent abrasiveness of the material as well as for health and safety concerns. Coarse crystalline silica particle fractions are extremely hard and abrasive materials. Moreover, fine crystalline silica particle fractions are undesirable because they are a pulmonary carcinogen and inhalation hazard. The International Agency for Research on Cancer, part of the World Health Organization, has classified crystalline silica as a carcinogen.

11. The subject matter of the '091 patent, in non-technical terms, concerns the agricultural industry's need to protect plant substrates or surfaces, including leaves and fruit, with particle films comprising, for example, kaolin. In part, the subject matter

- 3 -

relates to the use of water-processed and thereby refined hydrous kaolin, so as to be substantially free of crystalline silica, on plant substrates or surfaces.

**Crop Protectant Products**

12. TKI manufactures and sells a kaolin-based crop protectant product under the brand name Surround®, for use as a broad spectrum agricultural crop protectant for controlling damage from various physiological disorders such as sunburn and heat stress as well as a growth enhancer. **Exhibit B** (Surround label). Surround comprises highly engineered calcined kaolin, and methods of using this substance to form agricultural particle films have enjoyed protection by numerous patents that have entitled TKI to exclude others from practicing the claimed inventions.

13. On information and belief, knowing that the use of agricultural particle films formed with calcined kaolin is protected by various patents issued in the late 1990s and early 2000s, to which TKI has rights, Sipcam instead deliberately chose to make, have made, offer for sale, and/or sell a water-processed hydrous kaolin, at least including its Cocoon® product, to create such films, and/or authorize others to do the same.

14. On information and belief, Sipcam's Cocoon crop sunburn and heat stress protectant comprises water-processed hydrous kaolin.

15. On information and belief, Sipcam's Cocoon product is sold to end users, including farmers, for application to crops such as fruits.

## COUNT I
### Infringement of U.S. Patent No. 8,637,091

16. Paragraphs 1 through 15 of this Complaint are incorporated by reference as though fully set forth herein.

17. All claims of the '091 patent are presumed valid and enforceable.

18. Sipcam is actively inducing others to infringe claims of the '091 patent, including claim 1, in violation of 35 U.S.C. § 271(b).

19. Sipcam has had knowledge of the '091 patent at least since February 24, 2014—shortly after this patent related to water-processed hydrous kaolin issued—when TKI sent a copy of the '091 patent to Sipcam. TKI also attempted to negotiate a license to the '091 patent with Sipcam in 2015, with continuing communications about the same in 2016. TKI most recently communicated with Sipcam about the '091 patent in June 2016; TKI again forwarded a copy of the '091 patent to Sipcam and alleged that Sipcam's induced acts, as described below, constitute infringement.

20. On information and belief, prior to the filing of this Complaint, Sipcam subjectively believed that there was a high probability that Cocoon was covered by the '091 patent. On information and belief, Sipcam willfully blinded itself to the infringing nature of Cocoon with respect to the '091 patent.

21. At least as of the filing of this Complaint, Sipcam has actual or constructive knowledge of the '091 patent and knowledge that the induced acts described below constitute infringement.

22. Despite Sipcam's knowledge of the '091 patent and knowledge of TKI's allegations of infringement, Sipcam is actively inducing others to infringe the '091 patent with the intent that these others will infringe the '091 patent, including claim 1. Sipcam instructs its customers to use Cocoon in an infringing manner through, *inter alia*, its label and marketing materials, which describe use of Cocoon in a way that infringes the '091 patent.

23. The end-users of Sipcam's Cocoon product, including but not limited to farmers, are directly infringing claims of the '091 patent, including claim 1, through their use of Cocoon as an agricultural particle film on plant substrates or surfaces, including those found on crops and plants with types of surfaces that include leaves and/or fruits.

24. Claim 1 of the '091 patent recites:

> An agricultural substrate having an agricultural particle film thereon wherein said agricultural particle film comprises functional particles that are
> > substantially free of crystalline silica and
> > selected from the group consisting of water-processed hydrous kaolin or water-processed bentonite, and
> > said agricultural particle film is a crop protectant and
> > is present in an amount greater than or equal to about an average of 20 micrograms per square centimeter on said substrate.

25. When Cocoon has been applied by an end-user to a plant substrate or surface, an agricultural substrate then has an agricultural particle film of kaolin deposited thereon wherein said agricultural particle film comprises functional particles.

- 6 -

Case 1:16-cv-00748-NCT-LPA   Document 1   Filed 06/24/16   Page 6 of 13

26. Cocoon is advertised as: "Reduc[ing] heat stress and sun damage by depositing a protective barrier on crops." *See* **Exhibit C**, *available at* http://www.sipcamadvan.com/products/cocoon-r.

27. A Cocoon specimen label, attached hereto as **Exhibit D**, states: "Cocoon™ crop sunburn & heat stress protectant forms a cooling and reflecting protective white barrier on the surface of agricultural, nursery and greenhouse crops. The Cocoon protective barrier protects plant surfaces from the harmful effects of heat stress and intense sunlight. Heat stress and intense sunlight may cause crop sunburn, slower plant growth and degraded crop quality."

28. The Cocoon specimen label states: "Cocoon may be applied through an irrigation system or by ground, air, backpack sprayer or other appropriate application equipment that provides uniform and thorough coverage of the plant surfaces."

29. The Cocoon specimen label also states: "Apply Cocoon to fruit, foliage, limb and trunk surfaces before periods of high temperatures and/or intense sunlight. Make the initial application at the highest recommended rate. After 7 to 10 days make a second application with a sufficient rate of Cocoon for adequate coverage. Subsequent applications may be made at 7- to 21-day intervals. Rainfall, plant growth and wind erosion may affect the quality of the Cocoon surface film. After rainfall, reapplication may be necessary to maintain consistent coverage of plant surfaces. Cocoon will adhere best to dry foliage. Avoid excessively thick film coatings in order to allow the plant to perform normal physiological functions."

30. A Cocoon Safety Data Sheet, attached hereto as **Exhibit E**, indicates, under "9.1 Information on Basic Physical and Chemical Properties" an "Appearance" of "White powder."

31. A Statement of Use for the Cocoon trademark filed on behalf of Advan LLC on July 14, 2008, attached hereto as **Exhibit F**, indicates that the mark is for goods that are "Plant health products, namely, insecticides, insect repellents, plant sunburn preventatives, and reflective particulate materials for application to the surface of plants, namely, kaolin." *See also* Combined Declaration of Use and Incontestability under Sections 8 & 15 for the Cocoon trademark filed on behalf of Advan LLC on August 29, 2014, attached hereto as **Exhibit G**.

32. Still further, an Advan LLC news release dated May 29, 2007 states: "Cocoon™, a crop sunburn and heat stress protectant, places a protective barrier of kaolin clay around food, nursery and greenhouse crops to reduce heat stress and the intense sunlight that can cause sunburn, slower plant growth and degraded crop quality. ¶ When mixed with water and applied to plant surfaces, Cocoon forms a dry, white reflective barrier to the sun's rays and the heat of the orchard." *See* **Exhibit H**, *available at* https://web.archive.org/web/20080725183944/
http://www.advanllc.com/newsroom/release-20070529-cocoon.html.

33. When Cocoon has been applied by an end-user to a plant substrate or surface, an agricultural particle film of kaolin is thus deposited thereon in a concentration to form a protective barrier.

34. Cocoon is substantially free of crystalline silica. Specifically, testing indicates total crystalline silica of less than 0.1 weight percent and respirable silica in bulk of less than 0.08 weight percent.

35. Cocoon is selected from the group consisting of water-processed hydrous kaolin or water-processed bentonite. Specifically, testing of Cocoon indicates a major concentration (i.e., greater than 20 wt%) of Kaolinite ($Al_2Si_2O_5(OH)_4$). Kaolinite is a hydrous aluminosilicate mineral.

36. Cocoon is advertised as having "Active ingredient: Water-washed Kaolin." *See* **Exhibit C**.

37. Testing of Cocoon also does not indicate the presence of any quartz, further confirming that Cocoon is water washed.

38. The agricultural particle film formed using Cocoon is a crop protectant. Cocoon is advertised as: "Exceptional-grade active ingredient forms a bright white reflective barrier" and "Reduces heat stress and sun damage by depositing a protective barrier on crops." *See* **Exhibit C**. In addition, Cocoon is advertised as being a "Product Type" that is "Plant Protection" with "Indications" as "Crops susceptible to sunburn and/or moisture stress." *See* **Exhibit I**, *available at* http://www.earthwiseagriculture.net/sipcam-cocoon.html.

39. When used as a crop protectant, Cocoon is present in an amount greater than or equal to about an average of 20 micrograms per square centimeter on the agricultural substrate. The Cocoon specimen label provides a "Cocoon Crop Protectant

Rate Chart" that indicates, for various crops, rates as low as 7.5 lbs./acre and as high as 100 lbs./acre. *See* **Exhibit D**. For reference and purposes of conversion, 1 lb. is 453.592 grams and 1 acre is 4046.86 square meters. Thus, the rates for Cocoon vary between 84 micrograms per square centimeter and 1,120 micrograms per square centimeter.

40. Sipcam's inducement of infringement therefore includes, but is not limited to: (i) knowledge of the '091 patent at least as early as February 24, 2014 and no later than the filing of this Complaint; (ii) intent to induce direct infringement of the '091 patent for example by end-users such as farmers who follow the Cocoon label and apply Cocoon to their crops to create an agricultural particle film thereon; (iii) knowingly aiding and abetting such infringement by making, having made, offering for sale, and/or selling a water-processed hydrous kaolin, at least including the Cocoon product, and providing labeling and/or other marketing materials directing use thereof by end-users, such that there is infringement of at least claim 1 of the '091 patent; and (iv) knowledge that its actions induce such infringement. Sipcam knows, for example, that when end-users create an agricultural particle film on their crops comprising Cocoon, Sipcam induces infringement of the '091 patent. Despite their knowledge, Sipcam continues to induce infringement of the '091 patent.

41. Sipcam will continue to infringe the '091 patent unless restrained and enjoined by this Court.

42. TKI has been, and continues to be, damaged by Sipcam's infringement of the '091 patent. TKI is suffering and will continue to suffer irreparable harm for which

there is no adequate remedy at law, unless this Court enjoins Sipcam's infringement of the '091 patent.

43. As a result of the acts of infringement by the Defendants, TKI has suffered and will continue to suffer damages in an amount to be proved at trial.

44. Sipcam's infringement has been committed with knowledge of the '091 patent and has been intentional, willful and deliberate. Sipcam's Cocoon product competes directly with TKI's Surround product, and Sipcam is aware that TKI's '091 patent relates to Cocoon. Despite knowing about TKI's '091 patent, Sipcam makes, has made, offers for sale, and/or sells Cocoon. Sipcam's actions despite the '091 patent demonstrate objective recklessness of Sipcam's infringement risk as well as that of its customers and/or end-users.

45. The full extent of Sipcam's infringement is not presently known to TKI. On information and belief, Sipcam has made, had made for Sipcam, offered for sale, and/or sold, or will make, have made, offer for sale, and/or sell, water-processed hydrous kaolin products for creating agricultural particle films on plant substrates or surfaces, such as leaves and fruit, under a different product name than Cocoon and that infringe the '091 patent in a similar manner to that described herein with respect to Cocoon.

46. As a result of Sipcam's infringement of the '091 patent, TKI has been damaged and will be further damaged, and is entitled to be compensated for such damages, pursuant to 35 U.S.C. § 284, in an amount to be determined at trial.

47. As a result of Sipcam's infringement of the '091 patent, TKI has suffered and will continue to suffer irreparable harm, for which TKI has no adequate remedy at law, unless the Court enjoins such infringing activities pursuant to 35 U.S.C. § 283.

## REQUEST FOR RELIEF

WHEREFORE, TKI respectfully requests that this Court enter a Judgment and Order in its favor and against Sipcam as follows:

(a) a judgment that each of Defendants has induced, and is inducing infringement of, the '091 patent under 35 U.S.C. § 271 by (i) making, having made, offering for sale, and/or selling, and/or (ii) authorizing other(s) to make, have made, offer for sale, and/or sell, water-processed hydrous kaolin, used in an infringing manner to form an agricultural particle film, at least including its Cocoon product;

(b) a judgment and order permanently enjoining each of Defendants from further infringing the '091 patent by (i) making, having made, offering for sale, and/or selling, and/or (ii) authorizing other(s) to make, have made, offer for sale, and/or sell, water-processed hydrous kaolin, used in an infringing manner to form an agricultural particle film, at least including its Cocoon product;

(c) a judgment and order requiring each of Defendants to pay all available and legally permissible damages to compensate TKI for each of their respective infringing acts, but in no event less than a reasonable royalty in accordance with 35 U.S.C. § 284;

(d) a finding that each of Defendants' conduct has been willful, warranting an award of treble damages under 35 U.S.C. § 284;

(e) a finding that this case is exceptional under 35 U.S.C. § 285 and all other applicable statutes, rules and common law, warranting an award to TKI of its reasonable attorneys' fees, costs, disbursements, and other expenses incurred in connection with this action;

(f) a judgment and order requiring that each of Defendants pay TKI pre-judgment interest and post-judgment interest on all damages awarded; and

(g) such further relief as this Court deems just and appropriate.

## Jury Demand

TKI demands a trial by jury on all issues so triable.

| | |
|---|---|
| Dated: June 24, 2016 | /s/ James C. Adams, II |
| | James C. Adams, II |
| OF COUNSEL: | N.C. State Bar No. 18063 |
| | jadams@brookspierce.com |
| Seth A. Watkins* | BROOKS, PIERCE, MCLENDON, |
| Rowan M. Dougherty* | HUMPHREY & LEONARD, LLP |
| James T. Ton-that* | P. O. Box 26000 |
| ADDUCI, MASTRIANI & SCHAUMBERG, LLP | Greensboro, NC 27420-6000 |
| 1133 Connecticut Avenue, NW | Telephone: (336) 373-8850 |
| Washington, DC 20036 | Facsimile: (336) 378-1001 |
| Telephone: (202) 467-6300 | |
| Facsimile: (202) 466-2006 | |
| watkins@adduci.com | |
| dougherty@adduci.com | |
| ton-that@adduci.com | |
| | |
| * special appearance will be noticed pursuant to Local Rule 83.1(d) | *Attorneys for Plaintiff Tessenderlo Kerley, Inc.* |